UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


MARK STEVEN FITCH and PATRICIA
FITCH, as Personal Representatives
of the Estate of MARK STEVEN FITCH,
JR., Deceased,

                 Plaintiffs,


vs.                           Case No.  2:03-cv-465-FtM-29DNF


SHERIFF MIKE SCOTT, in his official
capacity as the Sheriff in and for
Lee County, Florida[1], DEPUTY CHAD
EDWARDS, in his individual capacity,
DEPUTY GEORGE MINGIONE, in his
individual capacity, and DEPUTY
THOMAS FLYNN, in his individual
capacity,

                 Defendants.
_____/


**OPINION AND ORDER**

_____This matter comes before the Court on the following motions for summary judgment: (1) Defendant [Scott's] Motion for Summary Judgment (Doc. #55); (2) Defendants George Mingione and Thomas Flynn's Motion for Summary Judgment (Doc. #56); and (3) Defendant Edward's Motion for Summary Judgment as to Counts II, III and IV of the Plaintiff's Second Amended Complaint (Doc. #61).  Plaintiffs

_____

    [1]Current Sheriff Mike Scott is substituted for the former sheriff pursuant to Fed. R. Civ. P. 25(d)(1).

filed Oppositions to each motion.   (Docs. #69, 70, 71).   The
parties have also submitted voluminous documents in support of
their respective positions (Docs. #58-60, 72-79).

## I.

Summary judgment is appropriate only when the Court is
satisfied that "there is no genuine issue as to any material fact
and that the moving party is entitled to judgment as a matter of
law."   Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is
sufficient evidence such that a reasonable jury could return a
verdict for either party.  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).  A fact is "material" if it may affect the
outcome of the suit under governing law.  Id.  The moving party
bears the burden of identifying those portions of the pleadings,
depositions, answers to interrogatories, admissions, and/or
affidavits which it believes demonstrate the absence of a genuine
issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986); Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d
1256, 1259-60 (11th Cir. 2004).   To avoid the entry of summary
judgment, a party faced with a properly supported summary judgment
motion must come forward with extrinsic evidence, i.e., affidavits,
depositions, answers to interrogatories, and/or admissions, which
are sufficient to establish the existence of the essential elements
to that party's case, and the elements on which that party will
bear the burden of proof at trial.  Celotex Corp., 477 U.S. at 322;

<u>Hilburn v. Murata Elecs. N. Am., Inc.</u>, 181 F.3d 1220, 1225 (11th Cir. 1999).

If there is a conflict in the evidence, the non-moving party's evidence is to be believed and all reasonable inferences must be drawn in favor of the non-moving party. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). This procedure is particularly useful in an excessive force case such as this, since "[t]o deny summary judgment any time a material issue of fact remains on the excessive force claim could undermine the goal of qualified immunity to avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001)(internal quotation omitted). By taking the facts in the light most favorable to the party asserting the injury, the court has plaintiff's best case before it and can address the question of whether the defendant committed the constitutional violation alleged without having to assess any facts in dispute. <u>Robinson v. Arruqueta</u>, ___ F.3d ___ (11th Cir. July 7, 2005).

## II.

This case arises from the fatal shooting of a motorist by an off-duty deputy sheriff, who was accompanied by two other off-duty deputies and a civilian. There are numerous issues of disputed material fact. Plaintiffs' narrative of the facts (e.g., Doc. #71, pp. 1-4) is a reasonably accurate summary of the incidents when viewed from plaintiffs' perspective.

On March 21, 2003, Erica Starowicz ("Starowicz") was driving her boyfriend Chad Edwards' white Dodge Intrepid ("Intrepid") to a car show in Daytona Beach, Florida.  Also in the Intrepid were Chad Edwards ("Edwards"), George Mingione ("Mingione"), and Thomas Flynn ("Flynn"), all of whom were off-duty deputies with the Lee County Sheriff's Office.  Edwards was in the front passenger seat, Mingione was in the rear passenger seat, and Flynn was in the rear driver's-side seat.  The Intrepid had darkly tinted (illegally so) windows which did not allow a person to see the interior of the vehicle from outside.

While on Pine Island Road, Starowicz observed Mark Steven Fitch, Jr.[2] (Fitch or decedent) driving a van.  The exact interaction between Fitch and the occupants of Edwards' vehicle is disputed, although it seems accurate to characterize it as a "road rage" incident which escalated in intensity over a relatively short time.

Starowicz reported to the other occupants that Fitch was driving recklessly, speeding, and swerving in and out of cars.  Another witness (Michael Griffin) testified, however, that Starowicz's vehicle cut off Fitch's van.  In any event, Fitch began honking his horn, and Starowicz reportedly gave Fitch "the finger."

---

[2] Plaintiffs are Mr. Fitch's parents, Mark Steven Fitch ("Mr. Fitch, Sr.") and Patricia Fitch ("Mrs. Fitch"), who bring suit both as as personal representatives of Fitch's estate and individually.

Fitch was yelling at the occupants of the Intrepid, while the back seat passengers were yelling at Fitch.

When the vehicles stopped for a traffic signal, Starowicz saw Fitch lean over as if grabbing something from under his seat and attempt to exit his vehicle, but the traffic light changed and he got back into the vehicle.  She informed the other occupants of this attempt.  Deputy Edwards drew his Glock firearm from his holster; either at this time or at the second light discussed below (the testimony varies), Deputy Edwards handed a .380 caliber pistol from the glove box to Minigione.

Eventually, the vehicles stopped at another traffic signal and Starowicz reported to the other occupants of the Intrepid that she saw in the rear view mirror that Fitch was getting out of his vehicle.  According to some of the testimony, this is when the firearm was handed to Deputy Minigione.  Edwards directed the occupants to close the windows and directed Starowicz to bring the vehicle to a complete stop.  Fitch approached their vehicle carrying a metal pipe, smashed the rear driver's side rear window, then continued to hit the vehicle with the pipe.  Two non-participant witnesses (Griffin and Williams) testified that Fitch then observed something in the car, dropped the pipe, stepped away from the vehicle; Williams testified that Fitch was five to seven feet away from the vehicle and could not reach it; Griffin testified that Fitch was raising his hands to shoulder height. Griffin further testified that long after Fitch dropped the bar and

stepped back from the vehicle, Edwards brought his firearm over the top of the vehicle and fired one shot, striking Fitch in the chest. Fitch fell to the ground, and Edwards came around the car and kicked Mr. Fitch twice while saying, "Who the 'F. . .' do you think you are?"  It is undisputed that Edwards intentionally shot Mr. Fitch, who died as the result of a single gunshot would from Edwards' gun.  (Doc. #81, pp. 7-8).  Mingione and Flynn exited the vehicle after the shooting.

Medical examiner Dr. Rebecca Hamilton testified by deposition that Fitch died as a result of a gunshot wound to the upper right chest.  He was 22 years old on the day of his death, and was approximately six foot two and a half inches and weighed 222 pounds.  Mr. Fitch was actively under the influence of marijuana at the time of his death, and his blood alcohol content at 0.169 grams per deciliter was twice the legal limit.  Based upon the downward pathway of the bullet diagonally towards the spine, the height of Fitch, and the scenario of the shooting as described to her, Dr. Hamilton found that Fitch could not have been standing straight up when he was shot.

The Second Amended Complaint (Doc. #35) alleges five causes of action: (1) violation of 42 U.S.C. § 1983 by Sheriff Rodney Shoap (now Sheriff Mike Scott) in his official capacity as Lee County Sheriff for intentionally, knowingly and recklessly failing to train, instruct, supervise or discipline deputies on a continuing basis in the correct procedure for making arrests, use of force,

preparation of public records an investigating police misconduct and for approving or ratifying the unlawful, deliberate, malicious and reckless conduct of the individual deputy defendants (Count I); (2) violation of 42 U.S.C. § 1983 by Edwards, in his individual capacity, for objectively unreasonable use of excessive and lethal force in violation of the Fourth and Fourteenth Amendment of the United States Constitution (Count II); (3) violation of 42 U.S.C. § 1983 by deputies Edwards, Mingione and Flynn for conspiracy to plan and execute a plan to use lethal force resulting in Mr. Fitch's death (Count III); (4) wrongful death against Shoap in his official capacity (Count IV); and (5) wrongful death against Edwards in his individual capacity (Count V).

## III.

### A.  Section 1983 Principles

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiffs must allege and ultimately prove that (1) defendant deprived them of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiffs must allege and establish an affirmative causal

connection between the defendants' conduct and the constitutional deprivation.  <u>Troupe v. Sarasota County, Florida</u>, ____ F.3d ___ (11th Cir. 2005); <u>Marsh v. Butler County, Ala.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001)(en banc).  As to the sheriff in his official capacity, plaintiffs must establish that (1) their harm was caused by a constitutional violation, and (2) the sheriff in his official capacity is responsible for that violation.  <u>Collins v. Harker Heights</u>, 503 U.S. 115, 120 (1992).

**B.  Fourth Amendment Principles**

An excessive force claim must be analyzed under the Fourth Amendment and its objective reasonableness standard.  <u>Brosseau v. Haugen</u>,_____ U.S. ____ , 125 S.Ct. 596, 598 (2004);  <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).[3]  The legal principles concerning the use of deadly force are well established:  The Fourth Amendment protects individuals from "unreasonable" seizures, and encompasses the right to be free from the use of excessive force during a seizure.  To establish a Fourth Amendment claim based on the use of excessive force, plaintiffs must show that a seizure occurred and that the force used to effect the seizure was unreasonable.  Deadly force is "reasonable" for purposes of the Fourth Amendment when an officer: (1)(a) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or

---

[3]Plaintiffs have no freestanding Fourteenth Amendment claim because the decedent was "seized" at the time he was struck by the deputy's bullet.  <u>Carr v. Tatangelo</u>, 338 F.3d 1259, 1268 (11th Cir. 2003).

to others, or (b) if the suspect threatens the officer with a weapon or there is probable cause to believe that he had committed a crime involving the infliction or threatened infliction of serious physical harm; and (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible. Tennessee v. Garner, 471 U.S. 1, 11-12 (1985); Troupe, ___ F.3d at ___; Robinson, ___ F.3d at ____; Harris v. Coweta County, Ga., 406 F.3d 1307, 1314 (11th Cir. 2005); Crosby v. Monroe County, 394 F.3d 1328, 1333-34 (11th Cir. 2004).  All these conditions must be met or the use of deadly force is unconstitutional.  Harris, 406 F.3d at 1314.

The reasonableness inquiry in an excessive force case is an objective one, made in light of the facts and circumstances confronting the officer and without regard to the officer's underlying intent or motivation.  Robinson, ___ F.3d at ____. While the facts are viewed in the light most favorable to plaintiffs, the determination of reasonableness is made from the perspective of the officer.  Robinson, ___ F.3d at ___; Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004); Carr v. Tatangelo, 338 F.3d 1259, 1267 n.15, 1268-69 (11th Cir. 2003); Garrett v. Athens-Clarke County, Georgia, 378 F.3d 1274, 1279 (11th Cir. 2004).  As Judge Carnes has stated, "[i]n making an excessive force inquiry, we are not to view the matter as judges from the comfort and safety of our chambers, fearful of nothing more

-9-

threatening that the occasional paper cut as we read a cold record accounting of what turned out to be the facts." <u>Crosby</u>, 394 F.3d at 1333-34.

## C.   **Qualified Immunity Principles**

Plaintiffs can only establish a claim under the Fourth Amendment against the deputies in their individual capacities if the deputies are not entitled to qualified immunity. <u>Mercado v. City of Orlando</u>, 407 F.3d 1152, 1156 (11th Cir. 2005).   To be eligible for qualified immunity, defendants must first prove they were acting within the scope of their discretionary authority when the allegedly wrongful act occurred. <u>Mercado</u>, 407 F.3d at 1156; <u>Wood v. Kesler</u>, 323 F.3d 872, 877 (11th Cir. 2003).   If this is shown, the burden shifts to plaintiffs to show that qualified immunity is not appropriate. <u>Mercado</u>, 407 F.3d at 1156; <u>Wood</u>, 323 F.3d at 877.

The Court conducts a two-part inquiry to determine whether qualified immunity is appropriate. <u>Harris</u>, 406 F.3d at 1313-14; <u>Garrett</u>, 378 F.3d at 1278-79; <u>Dahl v. Holley</u>, 312 F.3d 1228, 1233 (11th Cir. 2003).  First, the court determines whether the summary judgment facts, viewed in a light most favorable to plaintiffs, show that the officer's conduct violated a constitutional right. <u>Brosseau</u>, 125 S.Ct. at 598; <u>Hope v. Pelzer</u>, 536 U.S. 730 (2002); <u>Saucier</u>, 533 U.S. at 201.  The second inquiry is whether, at the time of the violation, the constitutional right was clearly established in light of the specific context of the case, not

-10-

simply as a broad proposition.  <u>Brosseau</u>, 125 S.Ct. at 599-600;
<u>Dahl</u>, 312 F.3d at 1233.  "The relevant, dispositive inquiry in
determining whether a right is clearly established is whether it
would be clear to a reasonable officer that his conduct was
unlawful in the situation he confronted."  <u>Brosseau</u>, 125 S.Ct. at
599.

## IV.

While recognizing the existence of sharply disputed facts,
defendants assert that they are entitled to summary judgment even
when these disputed facts are viewed in the light most favorable to
plaintiffs.  Specifically, defendants assert that: (1) they did not
violate decedent's constitutional rights or conspire to do so; (2)
they are entitled to qualified immunity because they did not
violate decedent's clearly established constitutional rights or
conspire to do so; and (3) they did not wrongfully cause the death
of the decedent.  The Sheriff also argues that plaintiffs have not
established a basis for liability in an official capacity.  The
Court addresses the § 1983 claims first.

## A.   Count II: Excessive Force by Edwards

### (1)   Discretionary Function

Deputy Edwards asserts qualified immunity as an affirmative
defense to the § 1983 counts.  It is not disputed that Deputy
Edwards was acting within the scope of his discretionary authority
during the contact with decedent.  Plaintiffs plead that Deputy

Edwards was acting under color of state law and in the scope of their employment (Doc. #35, p. 4, ¶10) and defendant agrees. (Docs. #61, p. 35).  Thus, the burden shifts to plaintiffs to show Deputy Edwards is not entitled to qualified immunity.

### (2) Violation of Constitutional Right

Plaintiffs allege that Deputy Edwards violated Fitch's Fourth Amendment right by using excessive force.  It is undisputed that, in the presence of the officers, Fitch committed the violent act of smashing the window of the Intrepid with a pipe, which clearly endangered the occupants of the Intrepid.  From here, the evidence is contradictory.  Viewed in plaintiffs' favor, the evidence establishes that at the time he was shot Fitch had backed five to seven feet away from the Intrepid to a point where he could not reach the vehicle; had dropped the pipe he had used to smash the window; was not armed with another weapon; made no threatening gesture towards the vehicle or its occupants; was not attempting to flee; and raised his empty hands in a manner consistent with surrender.  Viewed in this manner, as the Court is compelled to do at this stage of the proceedings, the Court finds that a reasonable jury could find that Deputy Edwards acted unreasonably in shooting Fitch and therefore violated his Fourth Amendment right under the Garner analysis set forth below.

A reasonable jury could find, under plaintiffs' version of the facts, that at the time of the shooting Edwards did not have probable cause to believe that Fitch posed a threat of serious

physical harm to Edwards, who was standing with the Intrepid between himself and Fitch, or to the occupants of the Intrepid. According to this version of the facts, Fitch had dropped his only weapon, backed away from the vehicle, and raised his hands. Additionally, although there was ample probable cause to believe that Fitch had just committed a crime involving the infliction and threatened infliction of serious physical harm to the occupants of the Intrepid, Fitch did not threaten Edwards with a weapon at the time of the shooting and was not then threatening the occupants of the Intrepid.  Under plaintiffs' version of the facts, shooting Fitch was clearly disproportionate to the threat he posed at the time of the shooting.

A reasonable jury could also find that the use of deadly force was not necessary to prevent escape.  Fitch was not attempting to escape, and made no attempt at flight, prior to being shot. According to one witness, his empty hands were being raised in the air.  Therefore, under plaintiffs' version of the facts, Edwards could not reasonably believe that the use of deadly force was necessary to prevent Fitch's escape.

Finally, under the plaintiffs' version of the facts, a reasonable jury could find that it was feasible for Deputy Edwards to warn Fitch of the potential use of deadly force.  Edwards was at a safe location, Fitch had dropped the pipe, and Deputy Edwards could have given some warning about the possible use of deadly force, but failed to do so.

-13-

While a court is "loath to second-guess the decisions made by police officers in the field," the court "cannot conclude as a matter of law that a reasonable jury could not find that Deputy [Edwards'] actions were unreasonable under the standards for using deadly force articulated in <u>Garner</u>." <u>Vaughan v. Cox</u>, 343 F.3d 1323, 1331 (11th Cir. 2003). A reasonable jury could find that intentionally shooting Fitch under the circumstances established by the plaintiffs' version of the facts constituted the use of excessive force. Thus, plaintiffs have established, for summary judgment purposes, the violation of Fitch's Fourth Amendment right to be free from the excessive use of force during a police seizure.

### (3) Clearly Established Right

The second issue is whether the constitutional right was clearly established as of March 21, 2003; in other words, whether it would have been clear to an objectively reasonable officer that Deputy Edwards' conduct was unlawful. <u>Vaughan</u>, 343 F.3d at 1332. Plaintiffs must point to law which pre-dates the incident and, if caselaw, be from the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida. <u>Mercado</u>, 407 F.3d at 1159. In the qualified immunity context, an officer will be entitled to qualified immunity if he had arguable probable cause to employ deadly force, i.e., if the officer reasonably could have believed that probable cause existed to use deadly force. <u>Vaughan</u>, 343 F.3d at 1332.

Taking the facts in the light most favorable to plaintiffs, an objectively reasonable officer in Deputy Edwards' position could not have believed that he was entitled to use deadly force.  While Deputy Edwards argues that plaintiffs have not identified any case law on point, this is not dispositive under the facts of this case.  Officers have been on notice since 1985 that deadly force would be justified only by a reasonable belief that they or the public were in imminent danger.  Garner, 471 U.S. at 3.  Moreover, Florida Statute §776.012 only allows for the use of deadly force if a person reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony.  Under plaintiffs' version of the facts, these circumstances do not exist.  It is hardly surprising after Garner that there are few reported assertions that shooting a suspect who is surrendering is not excessive.  Indeed, the Eleventh Circuit and others circuits have noted that even pepper spraying an arrestee who is surrendering constitutes excessive force.  Vineyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002).  The Court finds that under plaintiffs' version of the facts an objectively reasonable officer in Deputy Edwards' position could not have reasonably believed that he was entitled to shoot Fitch at the time he did so.

Edwards is not entitled to qualified immunity as to Count II, and summary judgment is due to be denied as to Count II.

**B. Count III: Conspiracy by the Deputies**

In Count III, plaintiffs assert that the three deputies entered into a pre-arranged plan and conspiracy to use lethal force against Fitch which resulted in his death. (Doc. #35, ¶¶ 52-55).[4] Plaintiffs rely upon the following evidence to establish such a conspiracy: (1) all three deputies drew their firearms prior to any physical confrontation by Fitch; (2) the deputies failed to utilize an available police radio and cell phones to summon uniformed police officers to deal with the situation; (3) Deputy Edwards directed Starowicz to stop the vehicle, which permitted Fitch to catch up with them; (4) Deputy Edwards ordered Starowicz to roll up the window; (5) all three deputies failed to display their badges and weapons, and kept their weapons concealed until just before Fitch was shot; and (6) the deposition testimony of the three deputies differ significantly from "neutral" witnesses, thus displaying a consciousness of guilt.

"Conspiring to violate another person's constitutional rights violates section 1983." Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283-1284 (11th Cir. 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy." Bailey v. Bd. of

---

[4]Two defendants read into this count a claim of conspiracy to deny access to courts as well as a conspiracy to use excessive lethal force. Count III alleges only that defendants conspired to violate Fitch's constitutional right by using excessive deadly force. (Doc. #81, Pretrial Stipulation, pp. 2-3).

County Comm. Of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir.), cert. denied, 506 U.S. 832 (1992), quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990), cert. denied, 500 U.S. 932 (1991).

> To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants "reached an understanding to violate [his] rights." The plaintiff does not have to produce a "smoking gun" to establish the "understanding" or "willful participation" required to show a conspiracy, but must show some evidence of agreement between the defendants. For a conspiracy claim to survive a motion for summary judgment "[a] mere 'scintilla' of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party."

Rowe, 279 F.3d at 1283-1284. See also Arline v. City of Jacksonville, 359 F.Supp.2d 1300, 1312 (M.D. Fla. 2005). Circumstantial evidence may be sufficient to establish a conspiracy if it proves the existence of the conspiracy. Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 789 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1993).

Deputy Edwards first argues that summary judgment is warranted because plaintiffs have failed to show that he violated Fitch's constitutional rights and because he is entitled to qualified immunity. (Doc. #61, p. 41). For the reasons discussed above, the Court finds that a reasonable jury could find a violation of Fitch's Fourth Amendment rights by Deputy Edwards and that Deputy Edwards is not entitled to qualified immunity. The remaining issue as to Count III is whether plaintiffs have made a sufficient

showing of an agreement between the three deputies to use excessive lethal force.

The Court finds that no reasonable jury, viewing the record evidence in the light most favorable to plaintiffs, could find that the three deputies conspired to use excessive lethal force as to Fitch.  No reasonable jury could find a consciousness of guilt because the deputies' testimony differed from that of "neutral" witnesses.  Much of the testimony of these witnesses confirms that of the deputies, but it also differs in material respects.  For example, Michael Griffin testified that Deputy Edwards shot long after Fitch dropped the pipe, and Fitch had put his hands up and was backing up when Deputy Edwards shot; Imad Hannoud testified that Fitch was within approximately two feet of the vehicle and still had the pipe in his hand when Deputy Edwards shot, and Fitch at no point did anything which appeared to be giving up.  The fact that Deputy Edwards told the occupants to close the windows as Fitch approached with a pipe is a defensive measure hardly probative of an agreement to kill Fitch.  The short time period precluded the effective use of the police radio or cell phones when Fitch approached the vehicle, and failing to display badges or weapons in the short time interval is not evidence of a conspiracy to kill Fitch.  An officer who draws a weapon does not necessarily utilize excessive force, Jackson v. Sauls, 306 F.3d 1156, 1171-72 (11th Cir. 2000), or act unreasonably, United States v. Aldridge, 719 F.2d 368, 371-72 (11th Cir. 1983); Leber v. Smith, 773 F.2d

101, 105 (6th Cir. 1985), cert. denied, 475 U.S. 1084 (1986), and deputies who have guns drawn when their vehicle is approached by an angry man carrying a metal pipe cannot reasonably be said to have formed an agreement to kill that person.  The summary judgment motion will be granted as to Count III.

**D.  Count I: Sheriff Scott Official Capacity Claim**

Sheriff Scott seeks summary judgment because there is no evidence of an unconstitutional custom, policy or practice which would support a § 1983 claim against the sheriff in his official capacity.  Plaintiffs respond that a reasonable jury could infer the existence of an unconstitutional custom or practice by the Sheriff's Office, and therefore liability can be visited upon the sheriff in his official capacity.

Under § 1983, a governmental entity may not be held liable under a theory of *respondeat superior*, but instead may only be held liable when its "official policy" causes a constitutional violation.  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiffs can establish the requisite "official policy" in one of two ways: (1) identifying an officially promulgated policy, or (2) identifying an unofficial custom or practice shown through the repeated acts of the final policymaker of the entity. Grech v. Clayton County, Ga, 335 F.3d 1326, 1320-30 (11th Cir. 2003).  Plaintiff must identify the municipal policy or custom which caused his injury so that liability will not be based upon an

isolated incident, McDowell v. Brown, 392 F.3d 1289, 1290 (11th
Cir. 2004), and the policy or custom must be the moving force of
the constitutional violation.   Grech, 335 F.3d at 1330; see also
Board of County Commissioners v. Brown, 520 U.S. 397, 403 (1997);
Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

As plaintiffs correctly state, the issue is not one of
qualified immunity because the sheriff in his official capacity is
not eligible for qualified immunity.   While the Sheriff has
identified the formal written policies concerning the use of deadly
force by on-duty and off-duty deputies, plaintiffs do not assert
that these "admirable" written policies are the basis for
liability.   Rather, plaintiffs assert that there is an actual
albeit unwritten policy of tolerating, allowing, and/or encouraging
excessive/deadly force, and that this policy creates Monell
liability.   To establish this policy, plaintiffs' point to the
Sheriff's personal participation in the investigation in this case
and a prior federal case involving allegations of excessive force.

Plaintiffs first rely on testimony that Sheriff Shoap went to
the scene of the shooting; that the Sheriff and his deputy son were
good friends of Deputy Edwards; that the investigation was "feeble"
in a number of respects; and that the Sheriff declared it a "good
shooting" the same day it occurred.   Plaintiffs argue that the
active involvement of Sheriff Shoap in the investigation takes the
place of the requirement that a practice be pervasive or wide-
spread in order to satisfy Monell because it shows that Sheriff

Shoap must have known about the failure to adequately investigate the incident and discipline the officers.  The Court disagrees. Showing that the sheriff knew about the incident after-the-fact does not mean that the deputy acted pursuant to a policy, practice or custom.  Nothing about the Sheriff's presence would allow a reasonable jury to find there was a persistent or widespread policy allowing, tolerating or encouraging the excessive use of deadly force.

Plaintiffs also assert that "this is a case of history repeating itself," and cite Bruner v. Shoap, Case No. 02-110-cv-FtM-29 in which a jury found an illegal search and seizure and the use of excessive force by a Lee County Deputy Sheriff.  The Court rejects this argument for several reasons.  First, there is no factual similarity between the claims and testimony in Bruner, which related to the execution of a search warrant and the use of non-deadly force, and the events in this case.  Second, the jury found that the Sheriff had not maintained an unconstitutional policy or custom that was the proximate cause of plaintiff's damage and was therefore not liable.  Finally, the case was ultimately dismissed with prejudice based on a settlement with the deputy. The summary judgment motion will be granted as to Count I.

## V.  Wrongful Death

In Counts IV and V, plaintiffs assert a claim for wrongful death under Florida Statute §768, which states in pertinent part:

> When the death of a person is caused by the wrongful act,
> negligence, default or breach of contract or warranty of
> any person . . .and the event would have entitled the
> person injured to maintain an action and recover damages
> if death had not ensued, the person . . . that would have
> been liable in damages if death had not ensued shall be
> liable for damages as specified in this act
> notwithstanding the death of the person injured, although
> death was caused under circumstances constituting a
> felony.

Though it is undisputed that Deputy Edwards shot and killed Fitch, he argues that summary judgment is warranted on these claims because the force used was justified because it was "necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony," Florida Statute §776.012, and because Fitch was committing a forcible felony within the meaning of Florida Statute §776.085. Defendant also directs the Court to Fla. Stat. §776.05, which instructs on the parameters of force used by law enforcement officers while making an arrest.

The difficulty with these arguments is that Deputy Edwards does not view the evidence in the light most favorable to plaintiffs, as must be done at this stage of the case. When so viewed, a reasonable jury could find that the death was wrongful within the meaning of Florida law. Therefore, the motion will be denied as to Count V.

The Sheriff argues that Count IV fails to state a claim upon which relief may be granted as to him. This is essentially a motion to dismiss, which requires defendant to show that there are

-22-

no circumstances under which he could be found liable.  It is clear that, depending on how the jury views the facts, a reasonable jury could find against the Sheriff on this count.  Therefore, the motion is denied as to Count IV.

Accordingly, it is now

**ORDERED:**

1.  Defendant [Scott's] Motion for Summary Judgment (Doc. #55) is **GRANTED IN PART AND DENIED IN PART.**  Judgment will be granted in favor of defendant Mike Scott in his official capacity as Sheriff in and for Lee County, Florida as to Count I of the Second Amended Complaint; the motion will otherwise be denied.

2.  Defendants George Mingione and Thomas Flynn's Motion for Summary Judgment (Doc. #56) is **GRANTED.**  Judgment will be granted in favor of George Mingione and Thomas Flynn as to Count III of the Second Amended Complaint.

3.  Defendant Edward's Motion for Summary Judgment as to Counts II, III and [V] of the Plaintiff's Second Amended Complaint and incorporated Memorandum of Law (Doc. #61) is **GRANTED IN PART AND DENIED IN PART.**  Judgment will be granted in favor of defendant Chad Edwards as to Count III of the Second Amended Complaint, and otherwise denied.

4.   The Clerk of the Court shall withhold entry of judgment until the conclusion of the case.

**DONE AND ORDERED** at Fort Myers, Florida, this __10th__ day of August, 2005.

JOHN E. STEELE
United States District Judge